## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**PHH MORTGAGE CORP.,**

                **Plaintiff**,

**v.**

**JOSEPH SCOTT STUBER, et al.,**

                **Defendants**.

**Case No. 23-1123-DDC-TJJ**

## <u>MEMORANDUM AND ORDER</u>

Shot clocks run for a reason. Here, defendant Joseph Scott Stuber's shot clock for filing a Counterclaim against plaintiff, PHH Mortgage Corporation, has expired. Plaintiff thus moves to dismiss Mr. Stuber's Counterclaim as time-barred by the Kansas statute of limitations. At first glance, plaintiff's request seems open-and-shut. But it's not quite as straightforward as plaintiff hopes. Mr. Stuber brings a Counterclaim—not a claim—and Kansas law treats that pleading interval differently than it would treat filing of a freestanding complaint.

On June 20, 2023, plaintiff filed a Complaint (Doc. 1) for mortgage foreclosure against defendants' interest in the property at issue, a condominium in Wichita, KS. Plaintiff filed an Amended Complaint (Doc. 15) on August 25, 2023, seeking the same relief. Mr. Stuber filed an Answer and Counterclaim, alleging plaintiff—as the successor by merger—had violated the Kansas Consumer Protection Act (KCPA) by deceptive and unconscionable business practices. Doc. 21. Plaintiff then filed two motions. The first asks the court to dismiss Mr. Stuber's Counterclaim. Doc. 23. The second seeks dismissal of John Doe and Jane Doe as defendants.

Doc. 26. In its first motion, plaintiff asserts the KCPA's statute of limitations bars Mr. Stuber's Counterclaim. Doc. 23 at 1. The court agrees that the Counterclaim—as an affirmative action seeking relief—is untimely. And the court also agrees that none of Mr. Stuber's machinations to toll that statute of limitations change that conclusion. But Kansas law allows the Counterclaim to survive as a pure defense, nonetheless. When viewed purely as asserting a defense, Mr. Stuber's Counterclaim also weathers plaintiff's insufficient pleading and the absence of aggrievement arguments.

The court thus grants in part and denies in part plaintiff's Motion to Dismiss defendant's Counterclaim (Doc. 23). The court dismisses the Counterclaim as an affirmative claim but maintains its gist as part of the case as a pure defense. To round out the Order, the court also grants plaintiff's Motion to Dismiss defendants John and Jane Doe (Doc. 26). It explains both decisions, below.

## I.    Background

At the motion to dismiss stage, the court accepts Mr. Stuber's well-pleaded allegations as true and construes them in the light most favorable to him as counterclaimant. *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1267 (10th Cir. 2003). The court thus recounts the following background facts based on the Counterclaim's allegations and Mr. Stuber's admissions as defendant.

### *The Parties*

On July 9, 2009, Mr. Stuber executed a mortgage in connection with purchase of a condominium located at 17 Chisholm Creek Dr., Unit 216, Wichita, KS, 67220. Doc. 15 at 4 (Am. Compl. ¶¶ 9–11). The principal amount of loaned funds was $70,207. *Id.* (Am. Compl. ¶ 10). Ocwen Loan Servicing, LLC received assignment of Mr. Stuber's mortgage on May 21, 2013. *Id.* at 4 (Am. Compl. ¶ 13). Ocwen was a non-bank mortgage service provider. Doc. 21

2

at 4 (Counterclaim ¶ 2). Plaintiff is the surviving entity of a merger between Ocwen and PHH

Mortgage Corporation. *Id.* at 3 (Counterclaim ¶ 1).

### *Defendant's Payments to Ocwen*

Defendant filed for Chapter 13 bankruptcy in 2013 and listed Ocwen as a creditor. *Id.* at

5 (Counterclaim ¶ 6). From 2013 until 2017, the bankruptcy court directly paid Ocwen adequate

protection payments[1] each month on Mr. Stuber's behalf. *Id.* In late 2017, Mr. Stuber's

bankruptcy was converted to a Chapter 7 bankruptcy. *Id.* After that conversion, Mr. Stuber

made no payments to Ocwen until April 2018, thus going into arrears. *Id.* at 6 (Counterclaim

¶ 7). Seeking to reinstate his mortgage, Mr. Stuber wired Ocwen a lump sum payment of

$11,823.07 on April 24, 2018, to bring his account fully current. *Id.* Mr. Stuber alleges that

Ocwen improperly applied this payment to a non-interest bearing escrow account instead of

applying it to future mortgage payments. *Id.* at 11 (Counterclaim ¶ 17). If properly applied, Mr.

Stuber alleges that lump sum payment would have covered all payments due through February

2019. *Id.*

After the mortgage's reinstatement, Mr. Stuber attempted—but failed—to make regular

monthly payments via Ocwen's website. *Id.* at 6 (Counterclaim ¶ 8). Mr. Stuber then contacted

Ocwen. *Id.* Ocwen instructed Mr. Stuber how to make monthly payments and informed him

that an additional $4,900 was due along with those monthly payments. *Id.* Ocwen refused to

accept any amount less than the regular monthly payment plus the additional $4,900. *Id.* Mr.

Stuber contested this add-on charge. *Id.* Mr. Stuber thus didn't make payments in May, June,

July, or August of 2018. *Id.* at 8 (Counterclaim ¶ 11).

---

[1]      "Adequate protection" ensures "that the creditor receives the value for which the creditor
bargained prebankruptcy." *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987).

Mr. Stuber's August 20, 2018 statement reflected an amount due of $7,462.57. *Id.* Mr. Stuber alleges that this amount due exceeded the regular monthly payments by $5,446.41. *Id.* at 9 (Counterclaim ¶ 11). And Mr. Stuber asserts that this discrepancy demonstrates Ocwen inaccurately and deceptively reported his account's status. *Id.* (Counterclaim ¶ 12). Mr. Stuber postulates Ocwen may have tacked on the extra charges for add-on insurance products and forced, placed insurance. *Id.* at 9, 10 (Counterclaim ¶¶ 11, 14). And, he contends, he wouldn't have defaulted had Ocwen agreed to accept his regular monthly payment attempts—without the add-on charge—in summer 2018. *Id.* at 11 (Counterclaim ¶ 17). In September 2018, Ocwen filed a foreclosure action against Mr. Stuber. *Id.* at 7 (Counterclaim ¶ 10).

With these background facts in mind, the court turns to plaintiff's first Motion to Dismiss. Plaintiff argues that the court should dismiss Mr. Stuber's Counterclaim because it violates the governing statute of limitations and fails to plead facts which give rise to a KCPA claim. Doc. 23 at 2–9. The court begins with the statute of limitations argument, outlining as a preliminary matter the legal standard for dismissing claims as time-barred.

## II.    Motion to Dismiss on Statute of Limitations Grounds

A court properly may resolve statute of limitations questions on a Fed. R. Civ. P. 12(b) motion. *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). When assessing a statute of limitations argument presented by a motion to dismiss, the question is whether "the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks and citation omitted). "To resolve a statute of limitations issue on a motion to dismiss, the Court must find that the face of the complaint makes the answer 'apparent.'" *Rasnic v. FCA US LLC*, No. 17-2064-KHV, 2017 WL 6406880, at *7 (D. Kan. Dec. 15, 2017) (quoting *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008)). "A federal

4

court sitting in diversity applies state law for statute of limitations purposes." *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

### A.    Mr. Stuber's Untimely Counterclaims

Mr. Stuber's Counterclaim alleges that plaintiff violated KCPA provisions prohibiting deceptive and unconscionable acts or practices in connection with a consumer transaction.  Doc. 21 at 9–12 (Counterclaim ¶¶ 13–18) (appearing to assert claims under Kan. Stat. Ann. §§ 50-626 & 50-627).  A three-year statute of limitations applies to KCPA claims.  *Marksberry v. FCA US LLC*, 481 F. Supp. 3d 1229, 1235 (D. Kan. 2020); *see also Alexander v. Certified Master Builders Corp.*, 1 P.3d 899, 908 (Kan. 2000) (concluding "that actions under K.S.A. 50-634(b) seeking damages and civil penalties are subject to the 3–year statute of limitations found in K.S.A. 60-512(2)").[2]  "A KCPA claim becomes actionable—triggering the limitations period— when the consumer suffers legal harm or, in the words of the KCPA, is 'aggrieved.'"  *Florez v. Ginsberg*, 449 P.3d 770, 777 (Kan. Ct. App. 2019) (quoting Kan. Stat. Ann. § 50-634).  "The limitations period starts running when the consumer becomes aggrieved, even if he or she fails to recognize the harm."  *Id.* (citation omitted).

Here, Mr. Stuber premises his KCPA Counterclaim on two alleged events and attendant practices.  *First*, Mr. Stuber alleges that Ocwen improperly applied his $11,823.07 lump sum payment.  Doc. 21 at 6, 11 (Counterclaim ¶¶ 7, 17).  *Second*, Mr. Stuber alleges that Ocwen overcharged him, initially by adding $4,900 in unspecified charges in summer 2018 and then by adding an extra $5,446.41 on his August 20, 2018 statement.  *Id.* at 6, 8–9 (Counterclaim ¶¶ 8, 11–12).  Ocwen perpetrated these events through allegedly deceptive practices including deceptive monthly statements, deceptive and unconscionable charges for add-on insurance

---

[2]    Kan. Stat. Ann. § 50-634(b) authorizes aggrieved consumers to recover damages or civil penalties for KCPA violations.

products, insufficient noticing procedures for forced place insurance, and its refusing to accept regular payments unless Mr. Stuber paid the additional charges.  *Id.* at 6, 8–12 (Counterclaim ¶¶ 7–8, 11–17).  Given the substance of these claims, the operative date range when Mr. Stuber became aggrieved for purposes of his KCPA Counterclaim starts on April 24, 2018—when Mr. Stuber paid his lump sum payment that he claims Ocwen applied improperly to his account—and culminates with Ocwen's foreclosure action against Mr. Stuber in September 2018.  *Id.* at 6, 8–9, 11 (Counterclaim ¶¶ 7, 11, 16–17).  That is, Mr. Stuber's Counterclaim doesn't allege any unconscionable or deceptive practices after September 2018.[3]

The upshot is that Mr. Stuber became aggrieved—at the latest—in September 2018.[4] Applying the requisite three-year period imposed by the KCPA, Mr. Stuber's statute of limitations expired in September 2021.  That's well before this case began in June 2023, and well

---

[3]     To clarify, the Counterclaim includes a reference to "February of 2019."  Doc. 21 at 11 (Counterclaim ¶ 17).  But that date simply identifies how much time the lump sum would have covered Mr. Stuber's mortgage payments had Ocwen allocated it differently.  *Id.*  The February 2019 date doesn't allege plaintiff violated the KCPA at that point.  Instead, Mr. Stuber was aggrieved by Ocwen improperly applying the payment made in April 2018, when he "suffer[ed] legal harm."  *Florez*, 449 P.3d at 777.

Mr. Stuber also asserts that the KCPA allows for ongoing acts—and daily penalties—under Kan. Stat. Ann. § 50-636(d).  Doc. 21 at 12 (Counterclaim ¶ 18).  But even on that theory, Mr. Stuber identifies those ongoing, "multiple deceptive and/or unconscionable acts" as having occurred between two bookends:  his Chapter 13 bankruptcy in 2013 and Ocwen's foreclosure action in September 2018.  *Id.* So, September 2018 remains the very latest date when Mr. Stuber alleges plaintiff violated the KCPA.

[4]     In his response to plaintiff's motion, Mr. Stuber identifies the "starting date" for the relevant statute of limitations as August 14, 2019, the day when his attorney amended a state court Petition to include these KCPA allegations.  Doc. 25 at 3.  But Mr. Stuber arrives at this 2019 date based on a misstatement of the law.  He contends that the "statute of limitations starts at that point when plaintiff discovers the 'wrongs'" and then calculates the limitation period "from the time of discovery[.]"  *Id.* at 2, 3 (emphasis omitted).  But Kansas courts have held that *recognizing* the harm isn't required for the KCPA limitations period to begin.  *Florez*, 449 P.3d at 777 ("The limitations period starts running when the consumer becomes aggrieved, even if he or she fails to recognize the harm.").  Instead, the clock starts to run when a party becomes aggrieved.  *Id.*  Here, Mr. Stuber's Counterclaim identifies allegedly deceptive and unconscionable acts that culminate in Ocwen's foreclosure action in September 2018.  Doc. 21 at 11–12 (Counterclaim ¶¶ 17–18).  So, at latest, Mr. Stuber became aggrieved in September 2018—not at the point of discovery in August 2019.

before defendant filed his Counterclaim in April 2024.[5]  *See* Doc. 1 (Compl.); Doc. 21.  The

court provides the first of several timelines, below, to clarify the relevant dates.



In short, Mr. Stuber's Counterclaim is untimely unless he can establish a basis for tolling the

statute.  *See Mid-Continent Cas. Co. v. KCHM, Inc.*, No. CIV-19-259-RAW, 2020 WL

13866271, at *3 (E.D. Okla. Dec. 21, 2020) ("A plaintiff can defeat the motion [to dismiss] by

showing that an exception to the statute of limitations, such as tolling, exists.").

---

[5]     The court notes that Mr. Stuber's Counterclaim remains untimely regardless of the date the court uses as the Counterclaim's date.  That is, it doesn't matter whether the court uses the date when plaintiff filed the original Complaint—June 20, 2023, Doc. 1—or the date when Mr. Stuber filed his Counterclaim—April 1, 2024, Doc. 21.  Under either scenario, the date Mr. Stuber's Counterclaim statute of limitations runs (Sept. 30, 2021) falls well before any filings in this case.

      For what it's worth, it seems likeliest that Kansas courts would use the later of the two dates— April 1, 2024.  That's so because Kansas courts likely would treat the Counterclaim date much as they have treated cross-claim dates.  The Kansas Supreme Court has barred a cross-claim filed *outside* the statutory period—even when plaintiff filed the underlying petition *within* the statutory period.  *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs.*, 936 P.2d 714, 720 (Kan. 1997).  In other words, the actual date when the cross-claim was filed—and thus not reverting to the date when the petition was filed— determined the cross-claim's untimeliness.  *Id.*  The court thus predicts Kansas courts would treat a counterclaim in the same fashion.  Similar treatment makes sense because Kansas law groups together setoffs, counterclaims, and cross-claims when defining how these kinds of claims interact with the statute of limitations.  *See* Kan. Stat. Ann. § 60-213(d).  And so, the Counterclaim's filing date—April 1, 2024— likely stands as the operative date determining the timeliness of Mr. Stuber's Counterclaim.

### B. Tolling Arguments

Mr. Stuber's Response to plaintiff's Motion to Dismiss tries to do just that. *See* Doc. 25. He argues that various and sundry provisions tolled the statute of limitations, making his claim timely. And so, the court reviews his arguments to decide whether there's time left on Mr. Stuber's shot clock, below.

#### 1. Kansas's COVID Tolling Order

*First*, Mr. Stuber directs the court to administrative Orders issued by the Kansas Supreme Court during the COVID-19 health emergency. *Id.* at 3. The Kansas Supreme Court issued Administrative Order 2020-PR-016 on March 19, 2020.[6] This Order suspended "all statutes of limitations and statutory time standards or deadlines." *Korgan v. Est. of Hansen by & through Cramer*, No. 21-2567-JWB, 2022 WL 4465074, at *1 (D. Kan. Sept. 26, 2022) (quotation cleaned up). After this Order, "[s]tatutes of limitation and deadlines continued to be extended or suspended until April 15, 2021, when Kansas Supreme Court Administrative Order 2021-PR-020 . . . lifted the suspension for most deadlines and time limitations." *Id.* Mr. Stuber argues that these Orders "stopp[ed] the timeclock[.]" Doc. 25 at 3. Plaintiff retorts that these Orders "only tolled statutes of limitation which otherwise expired during the tolling period—but did not extend the running of the limitations period for all claims[.]" Doc. 30 at 3 n.4.

Our court has rejected plaintiff's approach explicitly. *See Korgan*, 2022 WL 4465074, at *3 (rejecting argument that "statutes of limitation which did not expire [between March 19, 2020

---

[6] The court takes judicial notice of Kansas Supreme Court Administrative Order 2020-PR-016 and Kansas Supreme Court Administrative Order 2021-PR-020. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (concluding court may "take judicial notice of . . . facts which are a matter of public record" (internal quotation marks and citation omitted)); *Valiente v. Dineequity, Inc.*, No. 08-2416-KHV, 2009 WL 1226743, at *1 (D. Kan. May 1, 2009) ("Courts often take judicial notice of various public records, including legislative committee reports and publications made by various administrative agencies."); *c.f. Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1119 (D. Kan. 2018) ("The court may take judicial notice of state court documents.").

and April 15, 2021] were left in place" and collecting cases where a party was "entitled to additional time because the statues of limitation were tolled in the early days of the COVID-19 pandemic"); *see also Boldridge v. City of Atchison, Kan.*, No. 24-4004-EFM-RES, 2024 WL 4452276, at *2 n.19 (D. Kan. Oct. 9, 2024) (accounting for Kansas Supreme Court's Orders regarding COVID-related tolling when calculating statute of limitations); *Wren v. Bowling*, No. 23-3091-JWB, 2024 WL 4202387, at *3 (D. Kan. Sept. 16, 2024) (same). And Kansas law counsels the same result. *See Fullen v. City of Salina, Kan*., No. 21-4010-JAR-TJJ, 2021 WL 4476780, at *7 (D. Kan. Sept. 30, 2021) ("'[A] person shall have the same number of days to comply with the deadline or time limitation as the person had when the deadline or time limitation was extended or suspended.'" (quoting Kan. Stat. Ann. § 20-172(d)(1))). Thus, the court here must exclude the COVID-19 Orders period and extend Mr. Stuber's statute of limitations by 392 days, placing its expiration in October 2022.[7]



All the same, Mr. Stuber's Counterclaim remains untimely—at least for now.

---

[7]    Even if the court assumes the latest possible date under the Counterclaim's allegations for plaintiff's allegedly violative behavior (September 30, 2018), excluding 392 days still places the statute of limitations' expiration in October 2022 (October 27, 2022—to be exact).

But Mr. Stuber, undeterred, tries a second tolling play.  The court takes it up in part 2, following.

## 2.    Previously Filed Cases and Tolling

*Second*, Mr. Stuber contends that other, earlier filed court cases also tolled the statute. Doc. 25 at 3–4.  In support, Mr. Stuber identifies two such cases:  a state court case he contends Ocwen commenced in September 2018 and a federal court case plaintiff commenced on March 21, 2022.[8]  *Id.* at 2–4.  Reading Mr. Stuber's Response generously, the court perceives two potential bases for Mr. Stuber's second tolling argument.  Neither one ends up helping him.  This analysis begins with Mr. Stuber's attempt to invoke Kansas's saving statute, Kan. Stat. Ann. § 60-518.

### a.    Kan. Stat. Ann.  § 60-518

Kansas's saving statute allows a plaintiff who timely filed an action but who failed in that action—though not on the merits—to refile without statute of limitations problems.  Specifically, this statute provides that "[i]f any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action with six (6) months after such failure."  Kan. Stat.

---

[8]    As plaintiff properly notes, Mr. Stuber didn't include any reference to this earlier litigation in his Counterclaim.  But the court cuts Mr. Stuber some slack—as it must with a pro se litigant.  *See Boldridge*, 2024 WL 4452276, at *1 ("If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite 'failure to cite proper legal authority, ... confusion of various legal theories, ... or [the plaintiff's] unfamiliarity with pleading requirements. However, it is not the proper role of a district court to 'assume the role of advocate for the pro se litigant.'" (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  And the Tenth Circuit permits district courts to review "not only the allegations of the complaint, but also matters subject to judicial notice" in its statute of limitations analysis.  *Anderson v. Herbert*, 745 F. App'x 63, 68 (10th Cir. 2018).  Proper judicial notice includes "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *Id.* (quotation cleaned up). The court—attempting to thread the needle between functioning as Mr. Stuber's advocate and reasonably reading his Counterclaim—thus addresses Mr. Stuber's tolling argument based on the earlier two cases.

Ann. § 60-518. "For a plaintiff to benefit from K.S.A. 60–518, he or she must have (1) commenced his first action within due time; (2) failed in his first action otherwise than upon the merits, *with the failure coming after the relevant statute expired*; and (3) commenced his new action within six months of the failure." *Taylor v. Casey*, 182 F. Supp. 2d 1096, 1102 (D. Kan. 2002) (emphasis added), *aff'd in part*, 66 F. App'x 749 (10th Cir. 2003).

But by its own terms, § 60-518 doesn't apply to the procedural facts here. Recall that (with the tolling provided by Kansas's COVID-19 Orders) Mr. Stuber's statute of limitations clock expired in October 2022. Even if the state court case follows the timeline adopted in Mr. Stuber's Reply (Doc. 25),[9] the state court case was dismissed sometime before March 21, 2022. Doc. 25 at 3–4 (explaining the chronological development of previous cases and identifying the state court as dismissing the state court case after April 15, 2021, but before plaintiff filed the first federal court case on March 21, 2022). And our court dismissed the earlier federal case for lack of subject matter jurisdiction on September 30, 2022.[10] So, these two actions' failings didn't "com[e] after the relevant statute expired[,]" as required for § 60-518 to apply. *Taylor*,

---

[9]     Despite its best efforts, the court can locate just one state court case between the relevant parties: a mortgage foreclosure action filed on July 10, 2013 and dismissed on February 19, 2014. *Ocwen Loan Servicing LLC v. Joseph Scott Stuber, et al.*, No. 2013-CV-002064 (Sedgwick Cnty., Kan.). But even if the court accepts Mr. Stuber's dates—with Ocwen filing the case in September 2018 and the state court dismissing it for lack of prosecution sometime before March 21, 2022—it doesn't change the outcome. Doc. 25 at 3–4. Dismissal still occurred *before* the limitations period expired. And, as noted above, for a plaintiff to benefit from Kansas's saving statute, dismissal must occur *after* the limitations period expires. *Taylor*, 182 F. Supp. 2d at 1102. So, even with Mr. Stuber's dates, the Kansas saving statute doesn't save his Counterclaim.

[10]     The court takes judicial notice of this earlier federal case. *PHH Mortg. Corp. v. Stuber*, No. 22-1075-JWB-KGG 2022 WL 4597852, at *3 (D. Kan. Sept. 30, 2022). Mr. Stuber alleges that the court dismissed the case for lack of subject matter jurisdiction on November 23, 2022. Doc. 25 at 4. But the court's research reveals that the court issued the order dismissing the case nearly two months earlier—on September 30, 2022. *Id.* To be sure, Mr. Stuber later filed a Motion to Reopen Case, which the court denied on November 23, 2022. *PHH Mortg. Corp. v. Stuber*, No. 22-1075-JWB-KGG, 2022 WL 17177350, at *3 (D. Kan. Nov. 23, 2022). But that filing doesn't change the salient fact: the court already had dismissed the case on September 30.

182 F. Supp. 2d at 1102. Both of the earlier cases Mr. Stuber identifies had powered down

before the October 2022 statute of limitations expired, a conclusion illustrated in the summary

timeline, below. In short, Kansas's savings statute doesn't save Mr. Stuber.



### b. 28 U.S.C. § 1367(d)

Alternatively, Mr. Stuber directs the court to 28 U.S.C. § 1367(d). This provision tolls

the statutory limitations period for a state-law claim asserted under the district court's

supplemental jurisdiction while the claim is pending in federal court. *Anderson*, 745 F. App'x at

68 ("Section 1367(d) preserves a state-law claim that is asserted in a federal proceeding and then

is dismissed." (emphasis omitted)); *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018) ("We

hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance,

i.e., to stop the clock." (emphasis omitted)). If § 1367(d) affects Mr. Stuber's timeclock, it

applies to the previous federal court case alone, not the state court case. Doc. 25 at 4. That's

because the Tenth Circuit has explained that § 1367(d) "preserves a state-law claim that is

asserted in a *federal* proceeding" but "does not indefinitely suspend the limitations period for a

state-law claim that first is brought in a state-court action." *Anderson*, 745 F. App'x at 68. So,

under Tenth Circuit precedent, the court can't toll the statute of limitations during the pendency

of the state court action.  The court thus considers solely whether the prior *federal* court case

tolled the statute of limitations for Mr. Stuber's KCPA Counterclaim during its pendency.

Answering this question requires the court to ask another question first:  Does § 1367(d)

apply to toll a statute of limitations when a party reasserts the state-law claim in federal court,

rather than in state court?  The Supreme Court has explained that "§ 1367(d) supplies 'a tolling

rule that must be applied *by state courts*.'"  *Artis*, 583 U.S. at 76 (emphasis added) (quoting *Jinks*

*v. Richland Cnty., S.C.*, 538 U.S. 456, 459 (2003)).  And other courts have concluded that

§ 1367(d) applies only to refiled claims in state court, not federal court.  *Malone v. Bayerische*

*Hypo-Und Vereinsbank, AG*, 425 F. App'x 43, 44 (2d Cir. 2011) (explaining § 1367(d) "applies

only to state claims dismissed from federal court and subsequently re-filed in state court");

*Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 796 (S.D. Ohio 1999) ("The Court finds no evidence

that § 1367 was intended to act as a savings statute, allowing a plaintiff to refile in *federal court*.

Thus, the Court concludes that § 1367(d) operates to guarantee that plaintiffs do not lose the

ability to refile their claims in *state court*[.]" (emphasis in original)).

While the Tenth Circuit hasn't spoken on the issue, these out-of-circuit cases suggest that

the court should decline to apply § 1367(d) to the present facts, *i.e.*, where Mr. Stuber has refiled

his Counterclaim in federal court.  This question, though an interesting one, isn't one the court

needs to resolve.  Even if the court were to conclude that it should toll the statute of limitations

from March 21, 2022, to September 30, 2022, it would only extend Mr. Stuber's clock to early

May 2023.[11]  And his KCPA claims would remain just as time-barred, as the timeline below

shows.  In short, Mr. Stuber's shot clock expired before the ball left his hands.

---

[11]    For those scoring along at home, the court's math already determined that—generously assuming
an original expiration date of September 30, 2021—the Kansas COVID-19 Order tolled Mr. Stuber's shot
clock until October 27, 2022.  If § 1367(d) also applied to toll the statute of limitations during the
pendency of the federal court case, that would toll his expiration date for another 193 days (from March



It might seem like the court's work is done.  But there's one complicating factor the court hasn't addressed yet:  Mr. Stuber asserts his KCPA claim as a Counterclaim, and not as a claim brought in a complaint.  And, as it turns out, this difference matters.

### C.    Counterclaims as Affirmative Actions or Pure Defenses

Last, plaintiff contends that the procedural status of Mr. Stuber's KCPA claim—asserted as a Counterclaim and not as a claim that initiated the action—doesn't matter under Kansas law. To that end, plaintiff argues that the pertinent statute of limitations, in Kan. Stat. Ann. § 60-512, applies to all "actions" and cites a Kansas Supreme Court case from 1965 to establish that a counterclaim is an independent action falling under § 60-512.  Doc. 23 at 3 ("As a general rule a . . . counterclaim . . . has the nature, characteristics and effect of an independent action [and] . . . . is regarded as an affirmative action in most jurisdictions, and therefore, unlike a matter of pure defense, is subject to the operation of the statute of limitations.") (quoting *Rochester Am. Ins. Co. v. Cassell Truck Lines, Inc.*, 402 P.2d 782, 786 (Kan. 1965)).  But it's not quite that simple.

---

21, 2022 to September 20, 2022).  Adding those 193 days gets Mr. Stuber to May 8, 2023.  And that can't save his KCPA Counterclaim because the earliest possible date for evaluating his Counterclaim's timeline is June 20, 2023, *i.e.*, using the date when plaintiff filed this action.  *See* note 5, above.  Mr. Stuber's claim is still dead on arrival.

To be sure, "the law of Kansas is that if the counterclaim is not brought before the running of the statute of limitations, then the counterclaim cannot be used as an affirmative action." *Hatfield v. Burlington N.R.R. Co.*, 747 F. Supp. 634, 641 (D. Kan. 1990). The court's analysis, above, already has concluded that Mr. Stuber didn't bring his KCPA Counterclaim before the statute of limitations expired. So, he can't pursue that claim as an affirmative action. But Kansas law still permits Mr. Stuber to use that claim "as a pure defense or set off against the plaintiff's claim[,]" provided the counterclaim meets certain conditions. *Id.*; *accord Dow v. Terramara, Inc.*, No. 90-1412-PFK, 1992 WL 403093, at *7 (D. Kan. Dec. 4, 1992) ("If the counterclaim is barred by the statute of limitations, it can still be used as a setoff or pure defense if the counterclaim could have existed but for the statute of limitations." (citing Kan. Stat. Ann. § 60-213(d))). Those conditions require that the counterclaim "'(a) coexisted with the plaintiffs' claim and (b) arises out of the "contract or transaction" on which the plaintiffs' claim is based.'" *Hatfield*, 747 F. Supp. at 641 (quoting *Lightcap v. Mobil Oil Corp.*, 562 P.2d 1, 13 (Kan. 1977)).

*First*, start with condition (a), whether the claims coexisted. Kansas courts begin their analysis by identifying when the claim and counterclaim were "alive." *Lightcap*, 562 P.2d at 13; *see also Mynatt v. Collis*, 57 P.3d 513, 526 (Kan. 2002). In *Mynatt*, the Kansas Supreme Court determined the precise period of overlap when both parties entertained "alive" claims and held that those "particular claims coexisted." 57 P.3d at 526 (quotation cleaned up). Mr. Stuber asserts a KCPA claim that came into being after his lump sum payment on April 24, 2018. Doc. 21 at 6, 8–9, 11 (Counterclaim ¶¶ 7, 11, 17). And Ocwen's allegedly deceptive and unconscionable conduct culminated in Ocwen's September 2018 foreclosure action. *Id.* at 11–12 (Counterclaim ¶ 17). So, using the terminology embraced by the Kansas Supreme Court, Mr. Stuber's Counterclaim was "alive" from late April (with Mr. Stuber's lump sum payment) to

September 2018 (with Ocwen's foreclosure action). Plaintiff, for its part, alleges that Mr. Stuber "has failed, neglected, and refused to make the payments due under the Note and Mortgage from May 1, 2018, and is in complete default[.]" Doc. 15 at 5 (Am. Compl. ¶ 16). Plaintiff's claims and Mr. Stuber's Counterclaim thus overlap, making them "alive" concurrently. This conclusion means that plaintiff's claims and Mr. Stuber's Counterclaim "coexisted." *See Hatfield*, 747 F. Supp. at 641. So the counterclaim satisfies the first condition for a pure defense or setoff to survive the statute of limitations.

*Next*, there's condition (b). It asks whether the counterclaim arises out of the contract or transaction on which plaintiff bases its claims. "While the term 'transaction' may encompass a contract, it is larger in scope and more comprehensive than 'contract' and may relate to matters entirely in tort." *Mynatt*, 57 P.3d at 526. Plaintiff's claims and Mr. Stuber's KCPA Counterclaim here both arise from a mortgage Mr. Stuber executed on July 9, 2009. It secured repayment of an FHA Note for loaned funds totaling $70,207. Doc. 15 at 4 (Am. Compl. ¶¶ 10–11); Doc. 21 at 7 (Counterclaim ¶ 9) (identifying the monthly payment at issue as deriving from a 30 year mortgage "with a beginning balance of $70,207"). And this level of overlap satisfies the second condition established by Kansas law, *i.e.*, it arises out of the "contract or transaction on which" plaintiff bases his claim. *Hatfield*, 747 F. Supp. at 641.

In sum, Mr. Stuber's Counterclaim is time-barred and thus can't "provide an independent basis for relief." *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 571 (10th Cir. 1980) (explaining that under New Mexico law defendant may assert time-barred counterclaim "only to the extent that it seeks relief in the form of common law recoupment. . . . [not] affirmative relief"). The court thus grants plaintiff's motion in part and dismisses Mr. Stuber's affirmative KCPA Counterclaim. But, to the extent Mr. Stuber asserts his KCPA Counterclaim as a pure

16

defense or setoff, it survives the statute of limitations. *See Dow*, 1992 WL 403093, at *8 (granting summary judgment against defendant's time-barred defamation claim "with respect to the actual counterclaim of defamation, but not with respect to the defamation claim as a setoff").

Having decided that Mr. Stuber's Counterclaim may continue as a pure defense, then, the court next considers whether those defenses withstand plaintiff's other argument for dismissal: insufficient pleading.

## III.    Motion to Dismiss on Pleading Sufficiency Grounds

Plaintiff alternatively moves to dismiss Mr. Stuber's Counterclaim because Mr. Stuber failed to plead facts which give rise to a KCPA claim, including failing to allege how he was aggrieved. Doc. 23 at 5–13. Plaintiff contends that "[o]n the facts plead[ed], there simply is no support for the contention by Defendant that PHH violated the KCPA." *Id.* at 9. It also asserts that defendant "is required to plead some manner in which he was aggrieved by the alleged violation." *Id.* Having limited Mr. Stuber's Counterclaim to a defense, the court must consider whether that defense survives plaintiff's challenges to pleading sufficiency. It begins by reciting the two governing bodies of law: Federal Rules of Civil Procedure 12(f) and 9(b). These two governing standards coalesce to define the pleading standard required of Mr. Stuber's KCPA defense.

### A.    Rule 12(f)

"The standard for determining the viability of a defense is set forth under Fed. R. Civ. P. 12(f), which provides that a party may move to strike an insufficient defense." *Destiny Clark v. Newman Univ., Inc.*, No. 19-1033-JWB, 2021 WL 2024891, at *6 (D. Kan. May 21, 2021) (citing *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011)). Although a court may strike a defense as insufficient, it's "a drastic remedy and must not be granted unless, as a matter of law, the defense cannot succeed

under any circumstances." *Bright Rock Energy LLC v. Cnooc Energy U.S.A. LLC*, No. 21-CV-0032-F, 2021 WL 2176912, at *1 (D. Wyo. Apr. 19, 2021) (internal quotation marks and citation omitted). That is, a "defense should not be stricken if there is any real doubt about its validity, and the benefit of any doubt should be given to the pleader." *Id.* (quotation cleaned up). The moving party thus bears the burden to "convince the court that [the challenged] defense is so utterly implausible that it cannot succeed under any circumstances." *Destiny Clark*, 2021 WL 2024891, at *7 (quotation cleaned up). That's "'a high bar.'" *Id.* (quoting *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1259 (D. Kan. 2011)).

### B.    Rule 9(b)

Plaintiff's high bar lowers here a bit, however, because Mr. Stuber's KCPA deceptive practices defense is subject to the more rigorous pleading standard applied to fraud claims.[12] *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003) ("The requirement of pleading fraud claims with particularity under Fed. R. Civ. P. 9(b) applies to allegations of deceptive trade practices under the KCPA."). And "Rule 9(b) applies to all

---

[12]    Not all courts agree that KCPA claims require pleading with particularity. *Compare Tomlinson v. Ocwen Loan Servicing, LLC*, No. 15-1105-EFM-KGG, 2015 WL 7853957, at *2 (D. Kan. Dec. 3, 2015) ("Although some of the claims sound in fraud, KCPA claims need not be pleaded with particularity.") *with Pinkney v. TBC Corp.*, No. 19-CV-02680-HLT, 2020 WL 1528544, at *6 (D. Kan. Mar. 31, 2020) ("After a careful review, the Court concludes that Plaintiff's allegations under the KCPA sound in fraud and, thus, are subject to Rule 9(b)'s heightened pleading standard and must be pleaded with particularity."). The Tenth Circuit hasn't weighed in. *See Sullivan v. Hartford Fin. Servs. Grp., Inc.*, No. 22-3118, 2023 WL 4635888, at *3 (10th Cir. July 20, 2023) (declining to decide whether Rule 9(b) applies to KCPA claim). In the context of this case, the court is persuaded the heightened pleading standard applies. Mr. Stuber's deceptive practice defense sounds in fraud, whereas some of the KCPA claims at issue in *Tomlinson* rested on unconscionability—not deception. Regardless, Mr. Stuber's KCPA deceptive practices defense survives under either standard.

claims of fraud or mistake, *including affirmative defenses*." *Bright Rock*, 2021 WL 2176912, at *1 (emphasis added); *accord Duran v. Homesite Ins. Co*., No. 24-cv-00635-NYW-NRN, 2024 WL 4884484, at *2 (D. Colo. Nov. 25, 2024) ("Because Rule 9 covers pleadings, these requirements apply to affirmative defenses as well as affirmative claims.").

So, Mr. Stuber's KCPA "allegations must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof'" to survive plaintiff's sufficiency challenge. *Duran*, 2024 WL 4884484, at *2 (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). Keeping both the Rule 12(f) and the Rule 9(b) standards in mind, the court now applies them to Mr. Stuber's KCPA defense.

### C.     Sufficiency of Mr. Stuber's Defense

Start with the first three pleading requirements under Rule 9(b)—the time, place, and contents of the alleged false representation. Mr. Stuber explicitly alleges a start date for his KCPA Counterclaim—April 2018. Mr. Stuber alleges that he wired Ocwen $11,823.07 on April 24, 2018, which, he contends, brought his "account fully current[.]" Doc. 21 at 6 (Counterclaim ¶ 7). And he includes a screenshot allegedly taken from Ocwen's website demonstrating the application of the wire transfer funds to his account. *Id.* at 9 (Counterclaim ¶ 11). Fast forward to August 20, 2018. Mr. Stuber alleges that then—just four months later—he owed a total of $7,462.57. *Id.* But it should have shown $2,016.16. *Id.* Mr. Stuber's KCPA claim involving deceptive monthly statements, deceptive and unconscionable add-on charges, insufficient noticing, and Ocwen's refusal to accept his payments without the additional amount owing, all emerged during this four-month timeframe. *Id.* at 6, 8–12 (Counterclaim ¶¶ 7–8, 11–17). These allegations fulfill the requirement to "set forth the time, place and contents" of the allegedly false representation. *Duran*, 2024 WL 4884484, at *2 (quotation cleaned up). And Mr. Stuber plainly asserts that Ocwen is the party making the allegedly false statements—the fourth pleading

requirement under Rule 9(b).  *See e.g.*, Doc. 21 at 8 (Counterclaim ¶ 11) ("Defendant alleges that

Ocwen charged him inappropriately.").  All that remains, then, is the fifth requirement:  the

question of consequences.

Plaintiff contends that Mr. Stuber never has alleged he was aggrieved by plaintiff's

conduct, *i.e.*, that he never suffered any consequences.  Doc. 23 at 9–10; Doc. 30 at 6.  The

Kansas Supreme Court has defined "aggrieved" to mean that a party's "legal right is invaded by

an act complained of or whose pecuniary interest is directly affected . . . . The term refers to a

substantial grievance, a denial of some personal or property right, or the imposition upon a party

of some burden or obligation." *Finstad v. Washburn Univ.*, 845 P.2d 685, 691 (Kan. 1993)

(internal quotation marks and citation omitted).

Mr. Stuber alleges that Ocwen "refused to accept his monthly payments unless they

included" the alleged extra charge.  Doc. 21 at 10 (Counterclaim ¶ 14).  And he asserts that he

wouldn't have defaulted—and Ocwen wouldn't have foreclosed—had Ocwen accepted and

properly applied his payments.  *Id.* at 10–12 (Counterclaim ¶¶ 14, 17).  The court concludes

these are sufficiently particular allegations of consequence to survive a sufficiency challenge.  To

be sure, plaintiff disputes the nature of the charges that led to foreclosure.  But "the Rule 12(f)

standard"—operative here because the court considers Mr. Stuber's Counterclaim as a pure

defense—"prevents the court from resolving factual disputes." *Destiny Clark*, 2021 WL

2024891, at *7.  So, plaintiff's fact dispute doesn't alter the result here.

Summarizing, Mr. Stuber's KCPA allegations contain all the pleading elements that Rule

9(b) requires.  So, the court won't strike or dismiss them as defenses here.  Bolstering this

conclusion is the "high bar" and "drastic remedy" language that a court must follow when it

evaluates a defense's pleading sufficiency. *Id.*; *Bright Rock*, 2021 WL 2176912, at *1.  The

court thus allows Mr. Stuber's KCPA Counterclaim to survive—not as an affirmative claim but purely as a defense. With that conclusion, the court turns to plaintiff's last dismissal motion.

## IV.        Motion to Dismiss Jane and John Doe (Doc. 26)

Plaintiff also asks the court to dismiss this action as it applies to defendants Jane and John Doe without prejudice. Doc. 26 at 1. The court finds this dismissal appropriate. "While a plaintiff initially may sue unknown defendants by naming them as 'John Doe,' that permission does not last forever." *Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1119 n.3 (D. Kan. 2020). The "Federal Rules of Civil Procedure [do] not permit such actions against unnamed defendants following a suitable length of time for the plaintiff to identify the John Does." *Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012). Plaintiff here named Jane Doe and John Doe as defendants in its Complaint, filed June 20, 2023, and its Amended Complaint, filed August 25, 2023. Doc. 1 at 2, 3 (Compl. ¶ 1.b.ii, iii); Doc. 15 at 2–3 (Am. Compl. ¶ 5). To date, plaintiff has identified neither Doe. And plaintiff now moves to dismiss them. The other defendants do not oppose this outcome. The court thus grants plaintiff's request and dismisses Jane and John Doe as defendants.

## V.        Conclusion

The court grants in part and denies in part plaintiff's Motion to Dismiss (Doc. 23) Mr. Stuber's Counterclaim. The court dismisses Mr. Stuber's Counterclaim as an affirmative claim for relief. But Mr. Stuber's Counterclaim survives as a pure defense. The court also grants plaintiff's Motion to Dismiss (Doc. 26) defendants Jane and John Doe.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Dismiss Defendant/Counterclaim Plaintiff Joseph Stuber's Counterclaim (Doc. 23) is granted in part and denied in part. Mr. Stuber's Counterclaim survives but solely as a defense.

21

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Dismissal of defendants Jane Doe and John Doe (Doc. 26) is granted.

**IT IS SO ORDERED.**

**Dated this 22nd day of January, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**