IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PHH MORTGAGE CORPORATION,

                Plaintiff,

v.

JOSEPH SCOTT STUBER, et al.,

                Defendant.

Case No. 23-1123-DDC-TJJ

**MEMORANDUM AND ORDER**

Plaintiff PHH Mortgage Corporation filed this lawsuit seeking to foreclose on a condominium titled in defendant Joseph Scott Stuber's name. Plaintiff has filed a Motion for Summary Judgment (Doc. 52). Plaintiff contends that Mr. Stuber defaulted on his loan, entitling plaintiff to foreclose on that property. Proceeding pro se,[1] Mr. Stuber offers a different view of things. According to Mr. Stuber, plaintiff's predecessor—Ocwen Loan Servicing, LLC—induced his breach by misapplying his mortgage payments to an escrow account. Mr. Stuber has marshalled sufficient evidence for a rational factfinder to agree with him. The court thus denies plaintiff's Motion for Summary Judgment (Doc. 52). Mr. Stuber also has filed a Motion for Reconsideration (Doc. 50), asking the court to revisit a prior Order that dismissed his Counterclaim. The court denies this motion, too. The court explains these results, below.

---

[1] Because Mr. Stuber proceeds pro se, the court construes his filings liberally and "hold[s] [them] to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

I.      **Background**

The court "view[s] the facts and draw[s] reasonable inference in the light most favorable to the party opposing the summary judgment motion"—here, Mr. Stuber. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation cleaned up).

The property at issue in this action is 17 Chisholm Creek Dr., Unit 216, Wichita KS 67220. Doc. 45 at 2 (PTO ¶ 2.a.ii.); Doc. 53-2 at 3 (Verdooren Decl. ¶ 6).[2] In July 2009, Mr. Stuber signed a note in exchange for a loan of $70,207. Doc. 45 at 2 (PTO ¶ 2.a.v.); Doc. 53-3. To secure the loan, Mr. Stuber also signed a mortgage. Doc. 45 at 2 (PTO ¶ 2.a.vii.); Doc. 53-4. An assignment of mortgage assigned this mortgage to Ocwen Loan Servicing, LLC in May 2013. *Id.* (PTO ¶ 2.a.ix.); Doc. 53-6. And plaintiff is the successor by merger to Ocwen. Doc. 45 at 3 (PTO ¶ 2.a.x.). Plaintiff is thus the current holder of the note and mortgage. *Id.* (PTO ¶ 2.a.xiii.).

In September 2017, Ocwen notified Mr. Stuber that he was in default. Doc. 53-8 at 4–6; Doc. 53-2 at 5 (Verdooren Decl. ¶ 15). Ocwen then tried to foreclose on the property, incurring over $4,000 in legal fees and expenses in the process. *See* Doc. 53-2 at 5 (Verdooren Decl. ¶ 16). The mortgage contains a provision that makes Mr. Stuber liable for all expenses incurred while foreclosing on the property. Doc. 53-4 at 7 (Mortgage § 18). Ocwen thus attempted to collect these fees and expenses from Mr. Stuber, who refused to pay them. Doc. 53-2 at 5 (Verdooren Decl. ¶¶ 17–18). Plaintiff purports to have exercised its right to declare the entire mortgage debt due. *Id.* (Verdooren Decl. ¶ 19). Citing a declaration from one of its employees,

---

[2]     There's a small flap about zip codes—the stipulation portion of the Pretrial Order lists the zip code of the condominium as 6722. Doc. 45 at 2 (PTO ¶ 2.a.ii.). But plaintiff asserts—and Mr. Stuber doesn't contest—that the zip code is 67220. Doc. 53-2 at 3 (Verdooren Decl. ¶ 6). Because zip codes have five digits, a rational jury only could find that the zip code is 67220.

plaintiff asserts that Mr. Stuber "is in complete default[.]" Doc. 53 at 4 (citing Doc. 53-2 at 5 (Verdooren Decl. ¶ 19)). And plaintiff brings a single breach-of-contract claim, seeking to foreclose on Mr. Stuber's condominium. Doc. 45 at 10 (PTO ¶ 4.a.).

Mr. Stuber sees this case quite differently. He asserts that the initial issues with this case originated when Ocwen incorrectly applied his mortgage payments to the escrow account. *See* Doc. 55 at 2–3. To support this assertion, Mr. Stuber submitted an escrow analysis, dated June 23, 2017. Doc. 55-1 at 3. This escrow document shows two payments in November 2016, each contributing $3,723 to the escrow balance. *Id.* at 2. The escrow balance goes on to show an ending balance of $14,054.30. *Id.* at 3. And the end of the document informs Mr. Stuber that

> there is an escrow balance surplus of $13,527.21 (this balance equals to the total amount paid into escrow minus the total amount of money to be paid out this year). We will send you a check for the remaining surplus balance within 30 days. However, if your account is not contractually current as of the analysis date, the escrow funds will remain in the escrow account.

*Id.* at 4.

Mr. Stuber also cites an internal memo from one of Ocwen's employees with the subject line "Stuber litigation insurance questions[.]" Doc. 55 at 3 (citing Doc. 55-2). This email memo acknowledges that there "were multiple errors on this loan[.]" Doc. 55-2 at 2. Specifically, the memo suggests that plaintiff added an insurance policy on Mr. Stuber's property for a coverage amount around $8 million instead of $65,001.51. *Id.* It also says that after catching the original error, the company updated the coverage amount to $496,642, not $65,001.51. *Id.* This underlying document is truncated and grainy, and it's difficult to discern the context of the internal email. It appears to respond to some other query that's not visible. But, the court notes, one of the property insurance policies referenced on this internal memo—OHZ0123882— matches a policy that appears on the escrow analysis. *Compare id.*, *with* Doc. 55-1 at 2. And the projected cost of this insurance policy on the escrow analysis is $3,723—the same amount that

Mr. Stuber claims Ocwen incorrectly applied to his escrow account instead of his mortgage debt. Doc. 55-1 at 2.

Mr. Stuber also asserts that Ocwen (and later, plaintiff) refused to accept his monthly payments after May 2018 because Mr. Stuber owed additional funds. Doc. 55 at 7. Mr. Stuber submitted no evidence that he tried to submit payments after May 2018. But two of plaintiff's exhibits corroborate his position that Ocwen and plaintiff would refuse payments until Mr. Stuber submitted the entire amount owed. *See* Doc. 53-8 at 5 ("Payments received that are less than the amount required to reinstate the mortgage will be returned, and will not stop any foreclosure proceedings that have begun."); Doc. 53-9 at 3 (similar).[3]

With that background, the court explains the summary judgment standard before applying it to this record.

## II.     Summary Judgment Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is

---

[3]     The court properly may consider these documents even though Mr. Stuber didn't cite them. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not

sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III. Summary Judgment Analysis

Plaintiff has moved for summary judgment against two sets of defendants. One is Mr. Stuber, who has litigated his defense actively. The other group consists of Chisholm Creek Condominium Homeowners Association and Ester Kay Manns, who each has failed to plead. The court takes up the summary judgment motion against Mr. Stuber before turning to the other two defendants.

### A.  Summary Judgment Against Mr. Stuber[4]

The dispositive issue for this summary judgment motion is whether Mr. Stuber has raised a triable issue that Ocwen—plaintiff's predecessor—caused his breach. A reasonable factfinder

---

[4]   The parties agree that Kansas law governs this action. Doc. 45 at 2 (PTO ¶ 1.d.). In diversity cases like this one, the court "applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim." *Nordwald v. Brightlink Commc'ns, LLC*, 603 F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The mortgage contains a choice-of-law provision, which specifies that the law of the jurisdiction where the property is located—Kansas—governs the mortgage agreement. Doc. 53-4 at 6 (Mortgage § 14). Under Kansas law, this provision is enforceable. *See Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002) ("Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement.").

The note doesn't contain a choice-of-law provision. *See generally* Doc. 53-3. But Kansas law instructs courts to construe simultaneously executed mortgages and notes together. *Farmers & Merchants Bank v. Copple*, 373 P.2d 219, 221 (Kan. 1962) ("Where a note and mortgage are executed on the same date and as a part of the same transaction between the same parties, they will be read and construed together[.]"). So, the court applies the mortgage's choice-of-law provision to the note as well. Plus, no party has made "'a clear showing that another state's law should apply,'" so the court "default[s] to Kansas substantive law." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 982 (10th Cir. 2014) (quoting *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007)). Kansas substantive law thus governs both the mortgage and the note.

could conclude that Ocwen improperly applied Mr. Stuber's mortgage payments to the escrow account, thus inducing his breach. So, on this record, plaintiff doesn't deserve summary judgment. The court explains.

The June 2017 escrow analysis shows two payments—each for $3,723—added to the escrow balance in November 2016. Doc. 55-1 at 2. To be sure, the analysis describes these payments as "Lender Placed Unit Owners/H06 refund." *Id.* So, it's far from clear that Mr. Stuber submitted these payments. They could represent some sort of refund from another source. The problem for plaintiff is that it never explains—or even tries to explain—the source of these payments. So, a reasonable factfinder is left with the possibility that Ocwen erroneously applied Mr. Stuber's mortgage payments to the loan's escrow account. Indeed, that same document shows an "actual ending balance" in the escrow account of $14,054.30. *Id.* at 3. The escrow analysis estimates that this total amounted to a surplus in the escrow account of $13,527.21 based on the estimated annual payments. *Id.* at 4. Viewed in the light most favorable to Mr. Stuber, this escrow analysis shows a significantly overfunded escrow account and suggests that Ocwen—plaintiff's predecessor—may have misapplied Mr. Stuber's mortgage payments to the escrow account.

Other evidence supports this conclusion, too. An internal memo between Ocwen's employees acknowledges some error on Mr. Stuber's account. *See* Doc. 55-2 at 2. Specifically, it says that an insurance policy was updated for a property value significantly greater than the value of Mr. Stuber's property. *Id.* And one of the policy numbers listed in that memo— OHZ0123882—is identical to one listed on the escrow analysis. *Compare* Doc. 55-2 at 2, *with* Doc. 55-1 at 2. The analysis associates the policy number with a projected escrow payment totaling $3,723—the same amount deposited twice in the escrow account a few months earlier.

Doc. 55-1 at 2. And plaintiff never tries to explain these two deposits or the projected payment of the same amount. A reasonable factfinder could read the escrow analysis and internal memo together to conclude that plaintiff improperly diverted Mr. Stuber's mortgage payments to the escrow account to fund the insurance policy.[5]

This conclusion—that a jury reasonably could find plaintiff's predecessor improperly applied Mr. Stuber's mortgage-debt payments to the escrow account—precludes summary judgment. That's so because the escrow analysis says that plaintiff wouldn't refund surpluses in the escrow account until Mr. Stuber was "contractually current[.]" *Id.* at 4. So, viewed in the light most favorable to Mr. Stuber, Ocwen put Mr. Stuber in a catch-22. It misapplied his mortgage payments to the escrow account, undermining his ability to become current on his account. Then, plaintiff and its predecessor locked that money away until Mr. Stuber paid off his past-due debt. A rational trier of fact thus could conclude that plaintiff (or its predecessor) caused Mr. Stuber to breach the contract by failing to apply his payments properly. And under Kansas law, a party can't cause another party to breach a contract and then sue based on that contrived breach. *See Briney v. Toews*, 95 P.2d 355, 355 (Kan. 1939) ("A party to a contract may not, in absence of justifiable cause, interfere, hinder or prevent performance by the other party and claim benefits or escape liability on the ground of nonperformance.");[6] *see also*

---

[5]  The court emphasizes the incomplete nature of the record it must draw from to reach these conclusions. The internal memo Mr. Stuber submitted is grainy and apparently cut from a larger email thread that the record doesn't include. *See* Doc. 55-2 at 2. Likewise, the escrow analysis Mr. Stuber submitted is grainy and includes only three of six pages in the document. Doc. 55-1 at 2–4. The summary judgment record doesn't contain any current accounting of the escrow account. Plaintiff notes the incompleteness of Mr. Stuber's submissions. Doc. 58 at 8. But plaintiff hasn't submitted complete versions of the documents. Nor has plaintiff offered any substantive evidence to dispel Mr. Stuber's allegations about Ocwen mishandling his mortgage payments. So, despite the somewhat difficult record here, the court remains duty bound to view the record in the light most favorable to Mr. Stuber, the party opposing summary judgment.

[6]  This quotation from *Briney* comes from that case's syllabus. Unlike the Supreme Court of the United States, the Kansas Supreme Court writes its cases' syllabi. *See* Kan. Stat. Ann. § 20-203 ("A

*Washburn S. Apartments LLC v. Hession*, 570 P.3d 1268, 1277 (Kan. Ct. App. 2025) ("[A] party to a contract may not refuse to permit another person to perform their obligations and later claim that the person has breached the agreement through that nonperformance.").

Plaintiff never contests the merits of Mr. Stuber's argument. Instead, plaintiff offers two procedural responses. *First*, plaintiff asserts that Mr. Stuber's presentation of facts doesn't comply with the court's local rules or with the Federal Rules of Civil Procedure. And *second*, plaintiff contends, issue preclusion prevents Mr. Stuber from asserting this improperly-applied-payments issue. Plaintiff contends a previous bankruptcy litigation resolved this question. The court disagrees on both points, taking them in turn, below.

### 1. Procedural Rules

Plaintiff first cries foul at Mr. Stuber's briefing. In particular, plaintiff contends that Mr. Stuber violated the Federal Rules of Civil Procedure and our court's local rules by including arguments in his "facts" section and by citing four exhibits (without page numbers) to support a page and a half of factual assertions. Doc. 58 at 1–3.[7] The court agrees that Mr. Stuber's briefing won't win a legal-writing competition. But that's hardly surprising since Mr. Stuber isn't an attorney. The court declines to ignore Mr. Stuber's presentation or deem plaintiff's facts admitted as a result. Mr. Stuber's disorganized briefing—including his arguments in the "facts"

---

syllabus of the points of law decided in any case in the supreme court shall be stated in writing by the judge delivering the opinion of the court, which shall be confined to points of law arising from the facts in the case, that have been determined by the court[.]"). "Syllabus points, which appear only in published appellate decisions, are considered binding statements of the controlling legal principles in the case." *Campbell v. State*, 526 P.3d 1083, 2023 WL 2818580, at *11 (Kan. Ct. App. 2023) (Atcheson, J., concurring).

[7]   Plaintiff also argues that Mr. "Stuber strategically included only a portion of each of the total of four documents he attached as exhibits, leaving some question as to whether these documents would even be admissible as evidence at all." Doc. 58 at 5. It's correct that Mr. Stuber's exhibits appear grainy and incomplete. *See* Doc. 55-1; Doc. 55-2; Doc. 55-3; Doc. 55-4. But plaintiff hasn't offered complete versions of these documents. Nor has plaintiff explained why these documents aren't admissible. So, the court considers them.

section and his somewhat haphazard citations—are the sort of issues courts forgive for pro se litigants. *See Hall*, 935 F.2d at 1110 (instructing courts to construe a pro se litigant's filings liberally despite his "failure to cite proper legal authority" and "his poor syntax and sentence construction"). Mr. Stuber laid out his theory of the case adequately—that plaintiff's predecessor improperly applied his mortgage payments to the escrow account—and cited the escrow analysis and internal memo in support. Doc. 55 at 2–4, 6. The court thus won't ignore or strike Mr. Stuber's presentation of facts.

That conclusion leaves plaintiff's other answer to Mr. Stuber's position—issue preclusion.

### 2. Issue Preclusion

Plaintiff's second argument contends that Mr. Stuber can't argue that plaintiff improperly applied his mortgage payments because plaintiff already asserted—and lost—this issue in a bankruptcy proceeding. Doc. 58 at 3–5. Thus, plaintiff contends, issue preclusion bars Mr. Stuber's argument.

Issue preclusion—also called collateral estoppel—"bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (quotation cleaned up). The party invoking the doctrine—here, plaintiff—bears the burden to establish these four elements:

> (1) the issue previously decided is identical with the one presented in the action in question,
>
> (2) the prior action has been finally adjudicated on the merits,
>
> (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and

> (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (quotation cleaned up). Plaintiff can't carry its burden on the first or second element.

### a. Identical Issue

It's not at all clear that the same issue—whether Ocwen improperly applied Mr. Stuber's mortgage payments to the escrow account—was at play in the bankruptcy proceedings. In those proceedings, Mr. Stuber filed a motion asking the court to issue an order "determining the current balance owed on" his mortgage and "requiring that all amounts paid by the Chapter 13 Trustee" to plaintiff's predecessor "be properly applied[.]" *In re Stuber*, No. 13-41255-13 JMK (D. Kan. Bankr. Nov. 28, 2016), Doc. 104 at 1.[8] His motion also complained that Ocwen had "purchased 'force-placed' insurance" on the condominium. *Id.* at 4. But it didn't say anything about Ocwen improperly applying payments to an escrow account. *See generally id.* Instead, it asserted that "the payoff information provided does not reflect payments in the amount of $15,024.70 that were made through the plan by Chapter 13 Trustee's Office in this case prior to June 3, 2016." *Id.* at 2. And the earlier motion also asserted that the trustee had made additional payments after August 8, 2016, totaling $21,242.29. *Id.* Neither of these figures (nor the difference between them) matches the $7,446 (*i.e.*, two payments of $3,723) Mr. Stuber now asserts Ocwen improperly placed in the escrow account.

With zero explanation, plaintiff asserts that "the issue [here] is identical—whether payments on Stuber's mortgage during the bankruptcy were properly applied." Doc. 58 at 4. To be sure, the bankruptcy court order resolving this motion used sweeping language. It explained

---

[8] The court can take judicial notice of documents filed in the bankruptcy proceeding. *See Bruce v. City and County of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023) ("[A] federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue.").

that "[a]ll amounts paid by the Chapter 13 Trustee to [plaintiff] have been properly applied to the balance owed by" Mr. Stuber. *In re Stuber*, No. 13-41255-13 JMK (D. Kan. Bankr. Feb. 1, 2017), Doc. 112 at 1–2. But it's not clear that the ostensibly improper *sorting* of funds was at issue before the bankruptcy court. That is, while Mr. Stuber's bankruptcy motion accused Ocwen of improperly charging him for insurance, it never alleged that Ocwen wrongly applied his mortgage payment to the escrow balance.[9] Also, Mr. Stuber's motion in the bankruptcy proceeding never mentioned the word "escrow" or asserted that plaintiff had applied payments to the escrow account improperly. If this sorting wasn't litigated in the bankruptcy proceeding, then the issue Mr. Stuber now raises wasn't "identical" to the one in play there. *Stan Lee Media*, 774 F.3d at 1297. Nor was it "actually and necessarily decided" as issue preclusion requires. *Turney v. O'Toole*, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990).

The court acknowledges that it's not entirely clear whether the bankruptcy court decided the exact same issue as Mr. Stuber raises here. But that's an issue on which plaintiff bears the burden. And in "determining the availability of issue preclusion" on a motion for summary judgment, the court "must view the evidence and all reasonable inferences favorably" to Mr. Stuber. *Truman v. Johnson*, 60 F.4th 1267, 1272 (10th Cir. 2023). Doing so, the court concludes that plaintiff hasn't shouldered its burden to demonstrate that the bankruptcy court

---

[9]   Mr. Stuber's motion in the bankruptcy court asserted that Ocwen improperly charged him $3,723 for insurance—the same value that Mr. Stuber alleges Ocwen twice placed in the escrow account. *In re Stuber*, No. 13-41255-13 JMK (D. Kan. Bankr. Nov. 28, 2016), Doc. 108 at 4. The bankruptcy order apparently resolved this insurance-charge issue, noting that "Ocwen has removed all forced-placed insurance fees from the balance owed by the debtor." Doc. 55-3 at 3. But Mr. Stuber now contends that "Ocwen had taken monies paid by Stuber as regular monthly payments, combined those payments to equal the total of $7,446 and moved them to the escrow account." Doc. 55 at 3. So, even if the bankruptcy court order resolved outstanding insurance charges Ocwen had attempted to recover from Mr. Stuber, it's not clear that it addressed the issue Mr. Stuber now asserts—that Ocwen improperly moved money to the escrow account to pay for those charges.

decided whether plaintiff improperly applied Mr. Stuber's payments to the escrow account. Issue preclusion thus doesn't prevent Mr. Stuber from raising his argument now.

The court would reach this same result for a second reason, as part b., following, explains.

### b. Fully Adjudicated

The second problems with plaintiff's issue preclusion argument is that the bankruptcy court didn't actually decide the issue. Instead, the parties reached an agreement resolving Mr. Stuber's motion. *See* Doc. 55-3 at 2 (entering order based in part on "agreement of the parties"). In fact, the bankruptcy court had set a trial to determine the merits of Mr. Stuber's motion. *See In re Stuber*, No. 13-41255-13 JMK (D. Kan. Bankr. Nov. 17, 2016), Doc. 101 at 1. But that trial never happened—presumably because of the "agreement of the parties" referenced in the bankruptcy court's order. *See* Doc. 55-3 at 3. So, the court concludes, the bankruptcy court's order reflected the parties' agreement, not an independent judicial determination. That's a problem for plaintiff.[10]

Issue preclusion doesn't apply when a court enters an order based on the parties' stipulation. "Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion." *United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002)

---

[10] The bankruptcy court's order suggests that it made this ruling based on "the Motions, agreement of the parties, and the record herein[.]" Doc. 55-3 at 2. But the bankruptcy court's docket is bare beyond that notation, containing virtually no records from which the court could find that Ocwen had applied Mr. Stuber's payments properly. To the contrary, the entirety of the record—as reflected on the bankruptcy court's docket—is Mr. Stuber's motion with attachments and a two-page response where Ocwen denied Mr. Stuber's allegations without any evidentiary support. *See In re Stuber*, No. 13-41255-13 JMK (D. Kan. Bankr.), Doc. 91, Doc. 95, Doc. 104. The court thus concludes that the bankruptcy court entered its order largely based on an agreement between the parties. In any event, viewing the facts in the light most favorable to Mr. Stuber, ample evidence supports the court's conclusion here that the bankruptcy court entered its order based on "agreement of the parties[.]" Doc. 55-3 at 2.

13

(quotation cleaned up); *see also* 18A *Wright & Miller's Federal Practice & Procedure* § 4443 (3d. ed. 2025) (explaining that "issue preclusion ordinarily does not attach" to parties' stipulation of issues "unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation"); *cf. Arizona v. California*, 530 U.S. 392, 414 (2000) ("In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion." (quotation cleaned up)). In sum, the court concludes that plaintiff hasn't established that the bankruptcy court "finally adjudicated" the improper-payments issue "on the merits[.]" *Stan Lee Media*, 774 F.3d at 1297. On this record, the court won't grant summary judgment based on issue preclusion.

### 3.     Conclusion

Mr. Stuber has adduced sufficient evidence for a rational trier of fact to conclude that Ocwen improperly placed his mortgage payments in the escrow account. And a factfinder reasonably could infer that this improper sorting of payments caused Mr. Stuber to breach his contractual agreements. It could find that plaintiff's predecessor wouldn't accept further payments until Mr. Stuber became current on his account, but Mr. Stuber couldn't get current on his account because plaintiff had locked thousands of his dollars in the escrow account instead of applying it to the loan's balance. Kansas law doesn't permit a party to a contract to induce a breach and then sue for that breach. Plaintiff doesn't deserve summary judgment against Mr. Stuber.

### B.     Service Issue – Remaining Defendants

Plaintiff also has moved for summary judgment against two additional defendants' interest in Mr. Stuber's condominium. Doc. 53 at 7–8. These defendants are Chisholm Creek

14

Condominium Homeowners Association and Ester Kay Manns. *Id.* The court denies this request because, it concludes, plaintiff hasn't served these defendants properly. *See Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1096 (D. Kan. 2007) (denying "summary judgment on the ground of insufficient service of process").

Plaintiff contends it served these defendants by publication. Doc. 53 at 7–8; Doc. 10; Doc. 13. And indeed, Kansas law permits in-state service by publication for foreclosure of a lien—but only in limited circumstances. Kan. Stat. Ann. § 60-307.[11] The Kansas statute specifies service in a foreclosure action "may be made by publication . . . if the party *with due diligence* is unable to serve summons in this state[.]" *Id.* § 60-307(a)(3) (emphasis added). Plaintiff's filing says that plaintiff was "unable to attempt personal service of summons on the following defendants: Chisholm Creek Condominium Homeowners Association, Esther Kay Manns." Doc. 10 at 4. But plaintiff never explains why it was "unable to attempt personal service[.]" *Id.* On this record, the court can't conclude that plaintiff exercised due diligence trying to serve these absent defendants. *Cf. Unified Gov't of Wyandotte Cnty./Kansas City v. Adauto*, 559 P.3d 354, 2024 WL 4901009, at *4 (Kan. Ct. App. 2024) (finding due diligence satisfied where plaintiff "unsuccessfully attempted to personally serve [defendant] several times").

Because plaintiff hasn't demonstrated that it has served these defendants properly, the court directs plaintiff within 30 days of this Order either to: (1) submit a filing documenting the due diligence plaintiff performed trying to serve these absent defendants; or (2) serve these

---

[11] Because the Federal Rules otherwise don't authorize service by publication, the court consults Kansas service law to determine whether plaintiff served these defendants properly. *See* Fed. R. Civ. P. 4(e)(1) (authorizing service on individuals that complies with state law), 4(h)(1)(A) (authorizing service on an association "in the manner prescribed by Rule 4(e)(1) for serving an individual").

defendants and submit proof of that service. Should plaintiff fail to submit such a filing, the court will dismiss these defendants without prejudice. *See* Fed. R. Civ. P. 4(m).

The court thus denies plaintiff's Motion for Summary Judgment (Doc. 52) in its entirety.

## IV. Motion for Reconsideration (Doc. 50)

Also before the court is Mr. Stuber's Motion for Reconsideration (Doc. 50). Mr. Stuber asks the court to reconsider a prior Order dismissing his Counterclaim. Mr. Stuber's motion fails procedurally and substantively. So the court denies it. The court explains, starting with the legal standard that governs motions for reconsideration.

### A. Legal Standard

"A motion to reconsider must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3. That is, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). But it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* A district court has discretion when deciding whether to grant or deny a motion to reconsider. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

### B. Procedure

Mr. Stuber's motion is untimely. He cites both Rule 54(b) and Rule 60(b). Doc. 50 at 1–2. But he can't rely on Rule 60(b) because the court hasn't entered a final, appealable judgment. *See King v. IC Group, Inc.*, 743 F. Supp. 3d 1346, 1351 (D. Utah 2024) (explaining that "Rule 60(b) is an inappropriate avenue" to seek reconsideration of an order that "did not resolve all outstanding issues and is not yet appealable"); *see also* Fed. R. Civ. P. 60(b) advisory

committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief[.]").

Without Rule 60(b), Mr. Stuber is left with Rule 54(b), which authorizes a court to revise "any order or other decision . . . that adjudicates fewer than all of the claims" in an action. Fed. R. Civ. P. 54(b). Our court's local rules require parties seeking reconsideration under Rule 54(b) to file such a motion "within 14 days after the order is served unless the court extends the time." D. Kan. Rule 7.3. Mr. Stuber's motion—filed more than four months after the order he asks the court to reconsider—doesn't meet this deadline. The court thus denies his motion on this basis.

But even if Mr. Stuber had filed his motion timely, the court still would deny it on substantive grounds.

### C. Substance

Mr. Stuber's argument also fails on the merits. Mr. Stuber hasn't even approached the lofty standard required for reconsideration.

The crux of Mr. Stuber's position is that the court improperly concluded that the statute of limitations for his Counterclaim—one asserted under the Kansas Consumer Protection Act (KCPA)—was three years. Doc. 50 at 3. As he explains it, his Counterclaim "is not a stand-alone KCPA claim, but rather a breach of contract claim invoking the KCPA only for the purpose of obtaining relief." *Id.* Thus, Mr. Stuber asserts, Kansas's five-year statute of limitations for written contracts—not the KCPA's three-year statute of limitations—governs his Counterclaim. The problem with this theory is that Mr. Stuber's Counterclaim simply and plainly alleged a violation of the Kansas Consumer Protection Act, repeatedly alleging "deceptive and unconscionable" acts or practices. Doc. 21 at 9–12 (Counterclaim ¶¶ 13–18); Kan. Stat. Ann. § 50-626(a) ("No supplier shall engage in any deceptive act or practice[.]"). It never alleged a breach-of-contract claim. *See generally id.* In fact, the only time the word

"breach" appears in Mr. Stuber's pleading is in the "Affirmative Defenses" section of the filing. *Id.* at 3. And Kansas law is clear that a three-year statute of limitations governs KCPA claims. *Alexander v. Certified Master Builders Corp.*, 1 P.3d 899, 908 (Kan. 2000) ("[W]e conclude that actions under K.S.A. 50-634(b) seeking damages and civil penalties are subject to the 3-year statute of limitations found in K.S.A. 60-512(2).").

Mr. Stuber thus has failed to demonstrate that the court's prior Order was clearly erroneous or otherwise caused manifest injustice. *See* D. Kan. Rule 7.3. He isn't entitled to the relief he seeks, and the court denies his Motion for Reconsideration (Doc. 50).

## V.     Conclusion

Mr. Stuber has presented a triable issue whether plaintiff's predecessor induced his breach by improperly applying his mortgage payments to the escrow account. Plaintiff thus doesn't deserve summary judgment on this record, and the court denies its Motion for Summary Judgment (Doc. 52). The court likewise denies Mr. Stuber's Motion for Reconsideration (Doc. 50) because it's untimely and fails on its merits.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff PHH Mortgage Corporation's Motion for Summary Judgment (Doc. 52) is denied.

**IT IS FURTHER ORDERED THAT** defendant Joseph Scott Stuber's Motion for Reconsideration (Doc. 50) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff must—within 30 days of this Order—either: (1) submit a filing documenting the due diligence plaintiff performed in attempting to serve defendants Chisholm Creek Condominium Homeowners Association and Ester Kay Manns; or (2) serve these defendants and submit evidence of that service.

**IT IS SO ORDERED.**

**Dated this 16th day of December, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
